IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES FIDELITY AND
GUARANTY COMPANY

    Plaintiff,

    v.

MIGUEL MALDONADO-LOPEZ, et al.

    Defendants.

**Civil No. 11-1179 (SEC)**

**OPINION AND ORDER**

Before the Court are defendants Miguel Maldonado-Lopez and Rosario I. Guzman Nieto's ("Defendants") motion to dismiss (Docket # 13), plaintiff United States Fidelity and Guaranty Company's ("Fidelity") opposition thereto (Docket # 15), and Defendants' reply (Docket # 18). After reviewing the filings, and the applicable law, Defendants' motion is **DENIED**.

**Factual and Procedural Background**

As part of its efforts to execute a judgment entered in its favor, Fidelity, a Maryland-based corporation, filed the instant diversity suit on February 16, 2011, asking this court to void the creation of a trust account (the "Trust") instituted by Defendants, who are married to each other and reside in Puerto Rico. Docket # 1. Because the Court is ruling upon a motion to dismiss under Fed. R. Civ. P. 12(b)(6), it will relate Fidelity's well-pleaded facts as alleged in its complaint. Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 529 (1st Cir. 2011) (citing SEC v. Tambone, 597 F.3d 436, 438 (1st Cir. 2010) (en banc)). Accordingly, the facts are as follows:

In November 2001, a real estate development company, initiated an action against Fidelity, in its capacity as a surety, seeking to collect monies allegedly due under a Performance

**Civil No. 11-1179 (SEC)**                                                                 **Page 2**

and Payment Bond issued by Fidelity on behalf of Ingenieros & Proyectistas, Inc. ("I & P"). Docket # 1, ¶ 7. In turn, on October 9, 2002, Fidelity filed a third-party complaint for indemnification and reimbursement against Defendants, who are I & P's principals. Id., ¶ 8. The third-party complaint was premised on a Master Surety Agreement executed by Defendants on September 29, 1997, whereby Defendants "induced" Fidelity to issue performance and payment bonds for a construction project in Guaynabo, Puerto Rico. Id., ¶ 9.

Less than ten days after Fidelity filed its third-party complaint against Defendants, the Maldonado-Guzman couple constituted the Trust with what was then called UBS PaineWebber, making an initial deposit of $395,955 Id., ¶ 10. Defendants listed two of their three daughters as beneficiaries of the Trust. Id., ¶ 11. According to the complaint, Defendants established the Trust to pay for the college expenses of their daughters. Id., ¶ 16. Puzzlingly, when the Trust was established Defendants' eldest daughter was approximately thirty-four (34) years old and their youngest daughter was approximately thirty (30) years old. Id., ¶ 17. Then, in March 2005, Defendants transferred the Trust to Signator Investors, Inc. Id., ¶ 20. As of January 31, 2009, the value of the Trust decreased to $315, 393, and according to the complaint, Defendants have failed to document or otherwise explain for such reduction in value. Id., ¶ 25.

On July 24, 2009, Judgment was entered in favor of Fidelity and against Defendants in the amount of $778,191.55. Id., ¶ 12. But because the Judgment remains completely unsatisfied, Fidelity has proceeded with discovery in aid of execution. Id., ¶ 14. Around February 24, 2010, Defendants first disclosed the existence of the Trust to Fidelity. Id., ¶ 15. Defendants, however, have failed to provide Fidelity with complete documentation in connection with the Trust. Id., ¶¶ 18-19.

**Civil No. 11-1179 (SEC)**                                                                 Page 3

Against this factual backdrop, Fidelity alleges, among other things, that no consideration was provided for the creation of the Trust, since it was instituted under circumstances where Defendants received no equivalent value for the transfer. See id., ¶¶ 30-34.

In their motion to dismiss, Defendants contend that because the present action was filed more than four years after the creation of the Trust, Fidelity's claims are time barred. Docket # 13, pp. 4-5. Fidelity opposes Defendants' only contention, alleging that they incorrectly assert that it seeks to rescind a contract, arguing that it "[s]eeks to have transfers of the Defendants' assets into a trust account deemed void as an improper attempt to conceal these assets from being executed upon." Docket # 15, p. 7. Hence, Fidelity posits that its claims are very much alive.

**Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F. 3d 107, 112 (1st Cir. 2008).[1] In evaluating whether Plaintiffs are entitled to relief, the court must accept as true all "well-pleaded facts [and indulge] all reasonable inferences" in plaintiff's favor. Twombly, 550 U.S. 544. The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F. 3d 301, 305(1st Cir. 2008). Courts "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Id. at 305-306. Nevertheless, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one

---

[1] "Fed. R. Civ. P. 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal quotation marks omitted).

**Civil No. 11-1179 (SEC)**                                                                                          **Page 4**

hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)); Buck v. American Airlines, Inc., 476 F. 3d 29, 33 (1st Cir. 2007); see also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999). Thus, Plaintiffs must rely on more than unsupported conclusions or interpretations of law, as these will be rejected. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

Moreover, "even under the liberal pleading standards of Fed R. Civ. P. 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Twombly, 550 U.S. at 559, *cited in* Rodríguez-Ortíz v. Margo Caribe, Inc., 490 F.3d 92 (1st Cir. 2007). Although complaints do not need detailed factual allegations, the plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Twombly, 550 U.S. at 556.

In Iqbal, 556 U.S. 662, the Supreme Court reaffirmed *Twombly* and clarified that two underlying principles must guide a court's assessment of the adequacy of pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. First, the court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. Id., at 1949. Specifically, the court is not compelled to accept legal conclusions set forth as factual allegations in the complaint. Id. Further, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555); see also Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory

to the factual."). In other words, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." <u>Ocasio-Hernandez v. Fortuño-Burset</u>, 640 F.3d 1,12 (1st Cir. 2011).

Second, a complaint survives only if it states a plausible claim for relief. <u>Twombly</u>, 550 U.S. at 556. Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility. <u>Id.</u> A claim has facial plausibility when the pleaded facts allow the court to reasonably infer that the defendant is liable for the specific misconduct alleged. <u>Id.</u>, at 1949, 1952. Such inferences must amount to more than a sheer possibility and be as plausible as any obvious alternative explanation. <u>Id.</u>, at 1949, 1951. Plausibility is a context-specific determination that requires the court to draw on its judicial experience and common sense. <u>Id.</u>, at 1950.

The aforementioned requirements complement a bedrock principle of the federal judicial system: a complaint must contain enough detail to give "a defendant fair notice of the claim and the grounds upon which it rests." <u>Ocasio-Hernandez</u>, 640 F.3d at 8 (citing Fed. R. Civ. P. 8(a)(2)). Accordingly, "[w]hile a plaintiff's claim to relief must be supported by sufficient factual allegations to be plausible under <u>Twombly</u> [and <u>Iqbal</u>], nothing requires a plaintiff to prove her case in the pleadings." <u>Chao v. Ballista</u>, 630 F.Supp. 2d 170, 177 (D.Mass. 2009). Put differently, even after <u>Twombly</u> and <u>Iqbal</u>, "[d]ismissal of a complaint under Rule 12(b)(6) is inappropriate if the complaint satisfies Rule 8(a)(2)'s requirement of a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Ocasio-Hernandez</u>, 640 F.3d at 11.

A different standard applies when dismissal is sought under Rule 12(b)(6) pursuant to a statute of limitations affirmative defense. Under this scenario, dismissal may be appropriate if "the facts that establish the defense . . . [are] definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and

other matters of which the court may take judicial notice." In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003); Jones v. Bock, 549 U.S. 199, 215 (2007). Thus, even though a complaint need not plead facts to avoid potential affirmative defenses, plaintiffs could plead themselves "out of court by alleging facts that are sufficient to establish the defense." Hollander v. Brown, 457 F.3d 688, 691 n. 1 (7th Cir. 2006).

**Applicable Law and Analysis**

A federal court sitting in a diversity case must apply the substantive law of the forum where the action is filed. Semtek Int'l. Inc. v. Lockheed Martin Corp., 531 U.S. 497, 498 (2001); Borschow Hosp. and Medical Supplies, Inc. v. Cesar Castillo Inc., 96 F.3d 10, 15 (1st Cir. 1996) (noting that Puerto Rico federal courts sitting in diversity jurisdiction, "[e]schew[] common law principles of contract interpretation in favor of . . . [the] civil code derived from Spanish law") (citing Guevara v. Dorsey Labs., Div. of Sandoz, Inc., 845 F.2d 364, 366 (1st Cir. 1988)). And, when interpreting Puerto Rico law, federal courts employ the method and approach promulgated by the Commonwealth's Supreme Court. See Nat'l Pharmacies, Inc. v. Feliciano-de-Melecio, 221 F.3d 235, 241-42 (1st Cir. 2000). The Civil Code of Puerto Rico establishes that

> [a] trust (*fideicomissum*) is an irrevocable mandate whereby certain property is transferred to a person, named the trustee (fiduciario), in order that he may dispose of it as directed by the party who transfers the property, named constituent (fideicomitente), for his own benefit or for the benefit of a third party, named the beneficiary (*cestui que trust*) or (fideicomisario).

P.R. Laws Ann. tit. 31, § 2541.[2]

Similarly, the Code sets forth the general precepts governing contractual relationships. Among other things, it affords contracting parties great flexibility to delineate the scope of any

---

[2] In Davila v. Agrait, 116 P.R. Dec. 549, 567-68, 16 P.R. Offic. Trans. 674 (1985), the Supreme Court of Puerto Rico recounted the historical evolution of the trust (*fideicomissum*), highlighting that it is governed by a blend of common and civil-law principles.

**Civil No. 11-1179 (SEC)**                                                                                      Page 7

agreement: "contracting parties may make the agreement and establish the clauses and conditions which they may deem advisable, provided they are not in contravention of law, morals, or public order. Id. § 3372. By like token, it establishes minimal constraints in terms of form: contracts are valid "whatever may be the form in which they may have been executed, provided the essential conditions required for their validity exist." Id. § 3451. Those conditions are "(1) [t]he consent of the contracting parties[;] (2) [a] definite object which may be the subject of the contract[;] [and] (3) [t]he cause for the obligation which may be established." Id. § 3391.

As relevant here, the Civil Code prescribes the instances of sufficiency of the "cause for the obligation": "In contracts, involving a valuable consideration, the . . . promise of a thing or services by the other party is understood as a consideration for each contracting party; in remuneratory contracts, the service or benefits remunerated, and in those of pure beneficence, the mere liberality of the benefactor." Id. § 3431.[3]

The foregoing legal precepts suffice to dispatch Defendants' sole argument, which fails for various grounds. The main reason why Defendants' proffer misses the mark lies in their begging the question. As noted above, in order to advance its statute of limitations contention, Defendants frame Fidelity's complaint as one seeking to rescind the Trust. See Docket # 13, p.

---

[3] Although the civil-law concept of *causa* differs from the common-law's consideration, the Court will use both terms interchangeably insofar as the Civil Code translates causa as consideration. But to be sure, *causa* is not common-law consideration and the reason why a party obligates himself "need not be to obtain something in return or to secure an advantage for himself." Unkel v. Unkel, 699 So. 2d 472 (La. Ct. App. 2d Cir. 1997) (citation omitted). *Causa* is what makes an agreement actionable, that is, legally enforceable. Ernest Lorenzen, Causa and Consideration in the Law of Contracts, 28 Yale L.J. 621, 624-25 (1919). "With the Romans, an agreement was not actionable unless there was some reason why it should be so. That result is that. . . *causa* means actionability, and does not denote anything else, independent of actionability, which creates that important characteristic." Id. at 625.

**Civil No. 11-1179 (SEC)**                                                                                        **Page 8**

2.[4] The relevant question here, however, is whether the Trust is a legal nullity, not whether Fidelity seeks to rescind it, as Defendants conveniently describes it to be. Seen through this prism, Defendants' argument falters.

As indicated above, Fidelity "[s]eeks to have transfers of the Defendants' assets into a trust account deemed void . . . ." Docket # 15, p. 7. So viewed, Fidelity seeks to declare the Trust's inexistence because of its lack of *causa*, an essential element of a contract. The Civil Code makes clear that "[c]ontracts without consideration or with an illicit one have no effect whatsoever [and] [that] consideration is illicit when it is contrary to law and good morals." P.R. Laws Ann. tit. 31, § 3432; id. § 3433 ("The statement of a false consideration in contracts shall render them void, unless it be proven that they were based on another real and licit one."); Sanchez Rodriguez v. Lopez Jimenez, 116 P.R. Dec. 172, 183, 16 P.R. Offic. Trans. 214 (1985).

Importantly, "*[t]here is no period of prescription (statute of limitations) for such an action*." Lummus Co. v. Commonwealth Oil Refining Co., 280 F.2d 915, 930 n. 21 (1st Cir. 1960) (citing Guzman v. Guzman, 78 P.R. Dec. 673, 682 (1955)) (emphasis added); Delgado Rodriguez v. Rivera Siverio, 173 P.R. Dec. 150, 163 (2008). Defendants incorrectly assert that an action to declare the Trust's inexistence has a four-year statute of limitations (Docket # 13, p. 4 n. 7), because that term applies only to actions that attack a defect in the consent of a party; such contracts are merely voidable. Garcia Lopez v. Mendez Garcia, 102 P.R. Dec. 383, 393

---

[4] Specifically, Defendants cite P.R. Laws Ann. tit. 31, § 3492(3) (providing that contracts "[e]xecuted in fraud of *creditors*, *when the latter cannot recover, in any other manner*, what is due them[,]" can be rescinded) (emphasis added). But they fail to explain how Fidelity became their creditor before the 2009 Judgment. They have failed to prove that, at the time of the Trust's establishment, Fidelity was a creditor under the purview of this "subsidiary and exceptional" action to rescind. See Flecha v. Santurce Cangrejeros, Inc., 145 P.R. Dec. 851, 857, 1994 P.R.-Eng. 909, 251 (1994). Moreover, only "[c]ontracts validly executed may be rescinded . . . ." P.R. Laws Ann. tit. 31, § 3491. As explained below, at this juncture the validity of the Trust has been seriously challenged by Fidelity.

**Civil No. 11-1179 (SEC)**   Page 9

(1974).[5] Indeed, while the contract exists, the party whose consent was vitiated can void it, having 4 years "[f]rom the date of the consummation of the contract" to impugn it. P.R. Laws Ann. tit. 31, § 3512. Upon the expiration of the 4-year statute of limitations, the contract is deemed valid for all purposes. Garcia Lopez, 102 P.R. Dec., at 393. But this is not the case here: Fidelity is not complaining about defective or vitiated consent. As explained, Fidelity assails, the underlying validity of the Trust because of, *inter alia*, lack of *causa*. A contract that is void *ab initio,* moreover*,* is impossible to validate. E.g., Arrieta Gimenez v. Arrieta Negron, 672 F.Supp. 46, 49 n. 2 (D.P.R. 1987). Defendants' contentions, therefore, miss the mark.

In the case at hand, Fidelity's averments suffice to cast doubts on the Trust's validity. The following allegations lend credence to this conclusion: (1) the transfer was to insiders; (2) Defendants retained control of the assets; (3) at the time of the creation of the Trust and transfer of assets, Defendants were aware that a suit had been commenced against Fidelity because of a Performance and Payment Bond issued it on behalf of Defendants; and (4) at the time of the creation of the Trust, Defendants knew of their duty to reimburse and indemnify Fidelity. Docket # 1, ¶ 34. And more crucially, the complaint states that Fidelity created the Trust, not in benefit of their daughters, but as an subterfuge to remain in control of money otherwise owed to its potential creditors. Id., ¶¶ 30-31.

The foregoing facts support the plausible inference that the Trust is a simulation and, possibly, a legal nullity. See Pueblo v. Plata Sugar Company, 58 P.R. Dec. 912, 919 (1941) (implicating that lying about the true constituent (*fideicomitente*) of a trust constitutes

---

[5] The Civil Code provides: "Consent given by error, under violence, by intimidation, or deceit shall be void." Id. § 3404. But "if a contract contains the necessary effectuating requisites (including the consent of the contracting parties), although tainted with defect or vice, there is nonetheless a contract because the defect may be cured." Dialysis Access Center, LLC v. RMS Lifeline, Inc., 638 F.3d 367, 378 (1st Cir. 2011) (citation and internal quotation marks omitted).

simulation); cf. Davila, 116 P.R. Dec., at 566, 16 P.R. Offic. Trans. 674 ("[T]he trust implies transference of property or ownership of the thing."). Again, where the cause of the contract is "wholly lacking," e.g., absolute simulation, no contract is deemed to have existed, and an action to declare its inexistence is the adequate remedy. Lummus Co., 280 F.2d at 930 n. 21 (construing Puerto Rico law).[6] In the same vein, contracts in prejudice of a third person (those that harm another party's rights) have an "[i]llegal consideration, hence, the aggrieved party would be entitled to seek its absolute nullity." Dennis, Metro Invs. v. City Fed. Savs., 121 P.R. Dec. 197, 218, 21 P.R. Offic. Trans. 186, 207 (1988). Such seems to be the case here, which is why Fidelity's allegations easily survive Defendants' motion to dismiss, thus "[r]ais[ing] a reasonable expectation that discovery will reveal evidence of the illegal [conduct]." Ocasio-Hernandez, 640 F.3d at 17 (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1955).[7]

**Conclusion**

Because the facts establishing Defendants' statute of limitations defense are not clear "on the face of the plaintiff's pleadings," Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 591 (1st Cir.1989), the Court need not go further. They have failed to meet their burden at this stage. And the collective weight of Fidelity's factual allegations, nudge its claims against

---

[6] Not all instances of simulation void a contract, however. Absolute simulation has such effect, whereas relative simulation does not. For a comprehensive discussion of this important distinction, see Diaz Garcia v. Aponte Aponte, 128 P.R. Dec. 1, 10, 1989 P.R.-Eng. 608, 550 (1989).

[7] In any event, although Defendants' motion to dismiss is rightly predicated upon Puerto Rico case law and Spanish authoritative commentaries, these are all in the Spanish language. Unfortunately, Defendants provided the Court with no official or certified English translations; that omission usually precludes the consideration of such dispositive material. See e.g., Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 539 n. 6 (1st Cir. 2011) (reiterating that the local rules of this District and federal law mandates federal litigation to be conducted in English) (citing D.P.R. Civ. R. 5(g); 48 U.S.C. § 864; Estades–Negroni v. Assocs. Corp. of N. Am., 359 F.3d 1, 2 (1st Cir. 2004) (per curiam) ("The law incontrovertibly demands that federal litigation in Puerto Rico be conducted in English.")).

**Civil No. 11-1179 (SEC)**                                                                                             **Page 11**

Defendants "across the line from conceivable to plausible." <u>Iqbal</u>, 129 S.Ct. at 1951. For these reasons, the motion to dismiss is **DENIED**.

    **IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of January, 2012.

                            *S/ Salvador E. Casellas*
                            SALVADOR E. CASELLAS
                            U.S. Senior District Judge